IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| VIVIAN NIEVES<br><br>Plaintiff,<br><br>v.<br><br>DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS, DEPARTMENT OF VETERAN AFFAIRS, AND THE UNITED STATES DEPARTMENT OF JUSTICE<br><br>Defendants. | Civil No. 23-1460 (GLS) |

**OPINION AND ORDER**

Plaintiff Vivian Nieves filed a Complaint against the United States Department of Veterans Affairs ("VA") claiming damages for gender discrimination and retaliation under Title VII of the Civil Rights Act. Docket No. 1. The VA filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docket No. 11. Plaintiff opposed at Docket No. 19. For the reasons discussed below, the VA's motion to dismiss is **GRANTED in part and DENIED in part**.

### I.    Factual Allegations in the Complaint

Plaintiff was employed as a Medical Technician of the VA in the Arecibo Outpatient Clinic. Docket No. 1 at ¶ 8. As alleged, from July 29, 2021, to November 30, 2021, a male coworker made unwelcomed sexual advances to Plaintiff, including by touching her hair and back, trying to touch her buttocks, and giving her sexual and intimidating looks while making sexually suggestive hand gestures. Id. at ¶¶ 10-12. On October 15, 2021, Plaintiff told her coworkers about the incidents, and on October 22, 2021, she sent an email to her immediate supervisors to report the unwelcomed sexual advances made by her male coworker. Id. at ¶ 13. An investigation was performed and concluded on November 16, 2021, concluding that the male coworker had engaged in unwelcomed sexual advances. Id. However, as alleged by Plaintiff, the Chief of Health

Administration Service at the VA set aside the conclusion of the original investigation and, on January 10, 2022, the male coworker returned to the work area shared with Plaintiff in the Arecibo clinic. Id. at ¶ 14. Plaintiff alleges that, as of January 18, 2022, she has had to take an involuntary leave due to the anxiety suffered as a result of the male coworker returning to her work site. Id. at ¶ 16. She also alleges that her supervisors have asked her on three occasions to transfer to another workstation. Id. at ¶¶ 17-18, 20, 22. And that she has not been selected for vacant nursing positions at the VA. Id. at ¶¶ 19, 21, 42. Plaintiff advances two causes of action, one for gender discrimination (in the modality of hostile work environment and disparate treatment) and another for retaliation, both under Title VII of the Civil Rights Act. Id. at ¶¶ 32-44.

## II.     Legal Standard

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of the pleadings. To survive a motion to dismiss, a complaint must establish "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007); Rodríguez–Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007); Fed. R. Civ. P. 12 (b)(6). A claim is plausible when the facts alleged allow for "a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663-64 (2009). The Court must accept the well-pleaded facts as true. Id. at 664. But the alleged facts must be enough to raise a right to relief above the speculative level. Id. at 677; Twombly, 550 U.S. at 545. In considering a motion to dismiss, after accepting the well-pleaded factual allegations in the complaint as true, the Court must resolve all inferences in favor of the plaintiffs. Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp., 523 F.3d 75, 85 (1st Cir. 2008); ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008). To survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions" "a formulaic recitation of the elements of a cause of action will not do […]". Twombly, 550 U.S. at 555. The Court may consider matters outside the pleadings, such as documents that are central to plaintiff's claims, documents sufficiently referred to in the complaint, documents the authenticity of which are not disputed, and official public records. Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013).

### III. Discussion

#### A. Exhaustion of Administrative Remedies[1]

The VA moves to dismiss any of Plaintiff's claims that are premised on actions that occurred before January 10, 2022. Docket No. 11 at pp. 7-12. The VA's argument is anchored on the informal consultation requirement of the EEOC, which requires that an aggrieved employee initiate informal consultation with the EEOC within 45 days of each discrete discriminatory action. The VA argues that, pursuant to the administrative record, Plaintiff's initial contact with the EEOC was on February 24, 2022. Docket No. 11-1 at p. 2. Therefore, the VA sustains that any of Plaintiff's claims pertaining to employment actions prior to 45 days before the initial contact (on January 10, 2022) are precluded for failure to exhaust administrative remedies. The VA further posits that Plaintiff is barred from seeking relief for actions that may have occurred after the filing of the EEOC complaint on May 28, 2022, because she failed to amend the complaint to include any such actions. Plaintiff counters by arguing that the informal consultation requirement only required Plaintiff to contact the EEOC (not to file a complaint) within 45 days and that the VA has not presented any evidence that Plaintiff failed to have such a contact within the required timeline. Docket No. 19 at p. 6. I mostly reject the arguments of the VA but for reasons different from those asserted by Plaintiff.

There is no question that federal employees may assert claims under Title VII of the Civil Rights Act in federal court. Colón v. Mills, 646 F.Supp.2d 224, 233 (D.P.R., Aug. 25, 2009). But there is also no dispute that, before they proceed to court to challenge any such employment actions under Title VII, they are required to exhaust administrative remedies. Id.; Soto v. McHugh, 158 F.Supp.3d 34, 46 (D.P.R., Jan. 20, 2016) (citing Brown v. General Services Administration, 425 U.S. 820, 832 (1976)); Franceschi v. U.S. Dep't. of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008)). The EEOC has adopted regulations with the applicable administrative exhaustion requirements. Id. As it pertains to the VA's argument here, pursuant to 29 C.F.R. § 1614.105(a), "[a]ggrieved persons who believe they have been discriminated against on the basis of race; color;

---

[1] In support of the motion to dismiss at Docket No. 11, the VA submitted the EEO Investigative Report dated January 12, 2023, at Docket No. 11-1 and the EEO Final Agency Decision dated June 12, 2023, at Docket No. 11-2. The Court will consider those documents **only** to the extent that they establish the dates in which Plaintiff initiated contact with the EEOC and the date in which she filed the administrative complaint. In no way does this imply that the Court is converting the motion to dismiss into a motion for summary judgment. See Cintrón-García v. Supermercados Econo, Inc., 818 F.Supp.2d 500, 506 (D.P.R. Oct. 17, 2011) (considering plaintiff's administrative charge without converting the motion to dismiss into a motion for summary judgment).

Nieves v. VA
Civil No. 23-1460 (GLS)

religion; sex; national origin; age; disability; genetic information; or pregnancy, childbirth, or related medical conditions must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." The initial contact with the counselor must be made "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). This deadline is subject to extensions under the circumstances contained in 29 C.F.R. § 1614.105(a)(2).

Courts will not entertain employment discrimination claims brought under Title VII unless administrative remedies have been exhausted first. Gazco-Hernández v. Neffenger, 299 F.Supp.3d 351, 359 (D.P.R., March 20, 2018); Rojas v. Principi, 326 F.Supp.2d 267, 274 (D.P.R., July 19, 2004) ("Failure to initially contact the counselor within 45-day term provided by the regulations causes plaintiff to lose his right to subsequently bring suit in court.") (citing Román-Martínez v. Runyon, 100 F.3d 213, 217 (1st Cir. 1996)). However, it is well settled that such a term is not jurisdictional and can be subject to tolling. Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005). Indeed, the term may be extended for equitable considerations or upon application of the continuing violations doctrine. Rojas, 326 F.Supp.2d at 274 (citing Román-Martínez, 100 F.3d at 220; Jensen v. Frank, 912 F.2d 517, 521 (1st Cir 1990) and Velázquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000)).

The VA argues that Plaintiff's claims with respect to events occurring between July 29, 2021, to on or about November 30, 2021, are unexhausted for Plaintiff's failure to have an initial contact with the EEOC until February 24, 2022— past the 45 days required by regulation. But all the events that occurred between those dates are events of alleged hostile work environment. See Docket No. 1 at ¶¶ 11-12. And, according to the allegations in the complaint, the hostile work environment continued after January 10, 2022, when the male coworker and alleged perpetrator returned to the work area shared with Plaintiff in the Arecibo clinic, and at least until July 11, 2023, the last day of the alleged sexual harassment by Plaintiff's coworker. Id. at ¶¶ 14, 37. According to the U.S. Supreme Court in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002), hostile work environment claims are not discrete acts of discrimination as these involve repeated conduct. Id. And, consequently, all actions that compose a claim of hostile work environment are part of one unlawful employment practice that does not necessarily occur in a particular day but rather over a period of time. Id. at 118. It is for this reason that "it does not matter, for purposes of the statute that some of the component acts of the hostile work environment

fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purpose of determining liability." Id. at 117, 122; see also Rojas, 326 F.Supp.2d at 274-75 (discussing hostile work environment claim under Morgan); Ríos Campbell v. U.S. Department of Commerce, 2020 WL 1482141, at *3 (D.P.R., March 22, 2020) ("[A]cts outside this time period may still be considered in the context of a hostile work environment claim."). Plaintiff's alleged hostile work environment claim is part of a continuing violation, which according to the allegations in the complaint, continued until July 11, 2023 (after February 24, 2022, the date when Plaintiff made the initial contact with the EEOC). Plaintiff is not barred from asserting those claims. See Gazco-Hernández, 299 F.Supp.3d at 361 ("doctrine allows suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can brought;" discussing the continuous nature of hostile work environment claims).

The VA cites Hernández v. Gutiérrez, 656 F.Supp.2d 101, 105 (D.D.C. 2009), to argue that the events that allegedly took place on June 5, 2023, and July 11, 2023, should be dismissed because these occurred after the filing of the administrative complaint in the EEOC on May 28, 2022, and Plaintiff failed to amend the complaint to include them. The event on June 5, 2023, relates to Plaintiff's allegation that she was not considered for a vacant position at the VA (Docket No. 1 at ¶ 42) and the event on July 11, 2023, relates to an act of unwelcomed advances made by Plaintiff's coworker (id. at ¶ 37). The former is part of Plaintiff's claim of retaliation and the latter of Plaintiff's claim of hostile work environment. The Hernández decision is premised on the Supreme Court's decision in Morgan. The Court in Hernández decided that a plaintiff is barred from proceeding with non-exhausted claims of discrete acts regardless of whether they occurred after the filing of an administrative complaint and regardless of whether they are sufficiently related to exhausted claims. Hernández, 656 F.Supp.2d at 105 (dismissing retaliation claim as it was an unexhausted discrete incident of discrimination). Plaintiff has not addressed the VA's argument or cited any case law contrary to the Hernández decision. But while the VA is correct that the June 5, 2023, alleged act of retaliation is discrete and unexhausted for Plaintiff's failure to amend the administrative complaint before the EEOC, the Hernández decision does not support the VA's argument with respect to the event of hostile work environment that allegedly took place on July 11, 2023. As established in Morgan and explained above, events of hostile work environment may be timely, provided that an act contributing to the claim occurs within the filing

Nieves v. VA
Civil No. 23-1460 (GLS)

period. The rest of Plaintiff's allegations that comprise the claim of hostile work environment were part of the claims asserted in the complaint before the EEOC. Therefore, the VA's request to dismiss Plaintiff's claims for failure to exhaust is granted only as to the June 5, 2023 event and denied as to the rest.

    **B.**    **Sufficiency of the Pleadings**

Title VII prohibits employers from discriminating "against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). A discrimination claim under Title VII may be established through direct evidence of discrimination. Patten v. Wal-Mart Stores East, Inc., 300 F.3d 21, 25 (1st Cir. 2002). Direct evidence "is evidence which, in and of itself, shows a discriminatory animus." Jackson v. Harvard University, 900 F.2d 464, 467 (1st Cir. 1990). This "consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60 (1st Cir. 2000); see also Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996) (remarks must be linked to adverse employment action). "'[S]tray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself' do not qualify as direct evidence." Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc., 999 F.3d 37, 51 (1st Cir. 2021) (citing Ayala Gerena, 95 F.3d at 96). Moreover, statements that are "inherently ambiguous," which may be interpreted in different ways, are not direct evidence of discrimination. Patten, 300 F.3d at 25 (quoting Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 583 (1st Cir. 1999)). Direct evidence is "relatively rare," although not insurmountable. Patten, 300 F.3d at 25 (quoting Fernandes, 199 F.3d at 580).

In the absence of direct evidence of discrimination, a plaintiff claiming relief for discrimination under Title VII must satisfy the burden-shifting framework established by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Zayas-Ortiz v. Becton Dickinson Caribe, Ltd., 878 F.Supp.2d 351 (D.P.R., July 23, 2012). Under the McDonnell Douglas framework, plaintiff has the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. McDonnell Douglas, 411 U.S. at 802. If successful on that front, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the objected employment action. Id. The burden of the employer is one of production, not persuasion. Id. If the employer meets the burden, the burden shifts back to the employee, who is required to

persuade that the employer's articulated reason for the employment action is pretextual. Id. at 803-804.

### 1. Hostile Work Environment

A hostile work environment claim is actionable under Title VII. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 73 (1986). A hostile work environment is "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Syst., Inc. 510 U.S. 17, 21 (1993). To prevail on a claim for hostile work environment, Plaintiff would have to establish that: (1) she is a member of the protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based in part on sex, (4) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create an abusive work environment, (5) the sexually objectionable conduct was both objectively and subjectively offensive, and (6) there is some basis for employer liability. Vizcarrondo-González v. Perdue, 2020 WL 1459070 *9 (D.P.R., Mar. 20, 2020) (citing Roy v. Correct Care Solutions, LLC, 914 F.3d 52, 61-62 (1st Cir. 2019)); Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998); Nieves-Borges v. El Conquistador Partnership, L.P., S.E., 936 F.3d 1, 8 (1st Cir. 2019). There is no "mathematically precise test" to determine the severity or pervasiveness of this conduct; the Court must consider the totality of the circumstances. Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006). The Court should consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is threatening and humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." Harris, 510 U.S. at 23; Morgan, 536 U.S. at 116. "[T]he pattern of conduct complained of must be (1) characterized by intimidation, ridicule and insult, not just minor unpleasantness or criticism, (2) offensive to the complainant precisely because of his or her membership to a protected class, and (3) sufficiently burdensome to materially alter the conditions of employment." White v. N.H. Dept of Corr., 221 F.3d 254, 259-60 (1st Cir. 2000). The Court must "distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher, 524 U.S. at 788.

Nieves v. VA
Civil No. 23-1460 (GLS)

Plaintiff has pled a viable claim of hostile work environment under Title VII. She is a federal female employee. Docket No. 1 at ¶ 1. She was subjected to unwelcomed sexual harassment. Id. at ¶¶ 10-12, 37. The purported harassment was based on sex. Id.; see Nieves-Borges, 936 F.3d at 9-10 (explicit sexual propositions are not necessary, it is sufficient to infer sex-based motivations from implicit proposals). As alleged, the harassment took place on several occasions from July 29, 2021, to November 30, 2021, and again on July 11, 2023, and included repeated hugging, touching (including her hair and back), attempted touching of her buttocks, staking behavior, intimidating looks or staring, sexually suggestive hand gestures, and frequent visits by the alleged perpetrator. Docket No. 1 at ¶¶ 10-11, 37; see Nieves-Borges, 936 F.3d at 10 (a series of individually tolerable incidents that add up to a pattern of hostility can suffice). As alleged, this made Plaintiff feel nervous, anxious, concerned for her safety, and distressed at work. Docket No. 1 at ¶¶ 12-14. It also, as alleged in the complaint, forced Plaintiff to take an involuntary leave from work due to the anxiety that the coworker's presence caused Plaintiff upon his reinstatement at work. Id. at ¶ 16. Plaintiff has thus sufficiently pled the severity and pervasiveness of the harassment and its impact on the condition of her employment at the VA. Further, assuming the truth of the allegations, it is reasonable to conclude that the sexually objectionable conduct was both objectively and subjectively offensive. See e.g., Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998) (while a smack on the buttocks by a football coach to a player on his way to the field may not be considered severe or pervasive, the same behavior towards someone in the office could very well meet the required standard). It is also reasonable to conclude that there is a plausible claim for employer liability. Allegedly, Plaintiff reported the hostile work environment to the VA, the VA's initial investigation concluded that there had been unwelcomed sexual harassment by the coworker, and the VA ultimately decided to reinstate Plaintiff's coworker to her work area on January 10, 2022. Docket No. 1 at ¶¶ 13-14. See Meritor Sav. Bank, 477 U.S. at 72-73 (albeit relevant to the analysis of employer liability, mere existence of a grievance procedure and policy against discrimination does not necessarily insulate employer from liability); Noviello, 398 F.3d at 95 (employer can be liable for coworker harassment if the harassment is causally connected to some negligence on the employer's part). Aside from the element of knowledge by the VA, which was properly pled in the complaint, it is plausible that Plaintiff could establish that the VA failed to take prompt and appropriate action to stop the harassment. See Id. at 96-97

(whether employer responded in an appropriate manner to the alleged sexual harassment presents factual disputes not amenable to resolution at summary judgment stage).

The VA seeks dismissal of this claim relying on the argument that Plaintiff failed to exhaust administrative remedies. That argument was rejected above. The VA also seeks for the Court to dismiss the claim as, according to the VA, Plaintiff's allegations do not show that the sexual conduct was unwelcomed, frequent, sufficiently severe or pervasive, or that it interfered with Plaintiff's work conditions. And lastly by arguing that the VA investigated the incidents, relocated the perpetrator, found no misconduct, and instructed the coworker not to have contact with Plaintiff. But the VA loses site of the applicable standard at this stage of the proceedings, as its arguments rest entirely on the VA's evaluation of the sufficiency of the evidence. See Docket No. 11 at pp. 16-17.[2] See e.g., Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 23 (1st Cir. 2014). At this stage of the proceedings, without the benefit of discovery, the Court is not evaluating whether there are no disputes of the material facts that would allow it to rule on the claim as a matter of law. Much less is the Court weighing the evidence, a task which is reserved exclusively for the trier of facts. The only task for the Court now is to credit Plaintiff's factual allegations and draw all reasonable inferences in her favor to determine whether Plaintiff has pled a plausible claim of hostile work environment. Id. Having done that, the VA's request for dismissal of Plaintiff's hostile work environment claim is denied.

**2. Disparate Treatment**

Title VII prohibits disparate treatment discrimination, precluding an employer from treating a particular person less favorably than others because of a protected trait. Frith v. Whole Foods Market, Inc., 38 F.4th 263, 270 (1st Cir. 2022) (citations omitted). "Disparate-treatment cases present 'the most easily understood type of discrimination.'" Ricci v. DeStefano, 557 U.S. 557, 577 (2009). A disparate-treatment plaintiff must establish intentional discrimination— that the defendant had a discriminatory intent or motive for taking a job-related action. Id. (quotations omitted); Frith, 38 F.4th at 270 (citation omitted). These cases ordinarily proceed under the three-step burden shifting framework of McDonnell Douglas. Colón, 646 F.Supp.2d at 234. As such, a

---

[2] The VA's reliance on the Final Agency Decision at Docket No. 11-2 to argue the weight of the evidence is unavailing. For the Court to rely on the Final Agency Decision to pre-judge the sufficiency of the evidence and rely exclusively on the agency's determinations of fact and conclusions of law, would be to completely eviscerate Plaintiff's right to seek judicial intervention to assert her claims under Title VII.

plaintiff claiming relief for disparate treatment must first establish a *prima facie* case of discrimination: that she is a member of a protected class, that she is qualified for the job, that she suffered an adverse employment action at the hands of the employer, and that there is a causal connection between her membership in a protected class and the adverse employment action. Luceus v. Rhode Island, 923 F.3d 255, 258 (1st Cir. 2019); Espional v. National Grid NE Holdings 2, LLC, 693 F.3d 31, 34 (1st Cir. 2012). Ultimately, plaintiff will have to show that others similarly situated to her in all relevant respects were treated differently by the employer. Colón, 646 F.Supp.2d at 236-237; Quiles-Carrasquillo v. De Joy, 2025 WL 25672, at *4 (D.P.R., Jan. 3, 2025).

Plaintiff has pled that she is part of a protected group and that she has consistently met work expectations at the VA. Docket No. 1 at ¶ 8. That she reported sexual harassment to her supervisors and that the VA's initial investigation found that the male coworker had engaged in unwelcomed sexual harassment. Id. ¶ 13. But that subsequently and despite having information that the perpetrator had incurred in similar conduct with other female employees, the VA (specifically, the male Chief of Health Administration Service) decided to set aside its original conclusion and returned the purported perpetrator to the work area. Id. ¶ 14. That the VA subjected Plaintiff to an unsafe workplace. Id. ¶ 15. And that when Plaintiff expressed anxiety over the return of the perpetrator to the work area, the VA required Plaintiff to take an involuntary leave and asked her to agree on a transfer to another work location. Id. ¶¶ 16-18, 20, 22. Plaintiff claims that she was treated less favorably than the male coworker and alleged perpetrator of the harassment. Id. ¶ 38.

The VA argues that the foregoing is not enough to plead a plausible claim of disparate treatment discrimination. I disagree. Again, the VA's arguments hinge on the appreciation of the facts and the weight of the evidence. For example, the VA alleges that the alleged perpetrator and Plaintiff did not share the same workspace, that Plaintiff's immediate supervisor is a female, that when the alleged perpetrator was returned to work he was instructed to refrain from having contact with Plaintiff and from visiting her work area, and that the perpetrator's gender was not the motivating factor for returning him to his post; that he was reinstated at work once the investigation concluded that no sexual harassment was established. See Docket No. 11 at pp. 24-25.[3] Although Plaintiff's factual allegations do not point to concrete evidence of a causal connection between her

---

[3] See note 2 above.

gender and the VA's decision to reconsider the results of the initial investigation, reinstate the coworker, and offer Plaintiff (rather than the alleged perpetrator) to take a leave or transfer locations, Plaintiff has provided sufficient factual averments to establish the plausibility of her claim for disparate treatment. "Although to ultimately succeed on the claim, [a] disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action, [w]e have explicitly held that plaintiffs need not plead facts in the complaint that establish a prima facie case under Title VII. Rather, the complaint simply must contain facts that 'plausibly allege' that the plaintiff experienced a discriminatory employment action." Frith, 38 F.4th at 271 (internal citations and quotations omitted) (emphasis in the original); Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013) ("The *prima facie* analysis in a discrimination case is an evidentiary model, not a pleading standard.") (quoted in Reynoso v. DeJoy, 658 F. Supp. 3d 10, 16 (D.P.R. 2023)). "A complaint that adequately states a claim may still proceed even if 'recovery is very remote and unlikely.'" Id. (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011)). The VA's request to dismiss Plaintiff's disparate treatment claim is denied.

### 4. Retaliation

Title VII makes it unlawful for an employer to retaliate against an employee because the employee has taken an action to enforce her rights under Title VII. 42 U.S.C. § 2000e. Pursuant to Title VII:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... for an employment agency ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a).

"The antiretaliation provision seeks to secure [a workplace where individuals are free from discrimination] by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 62 (2006). When, like here, there is no direct evidence of retaliation, retaliation claims are subject to the McDonnell Douglas burden-shifting framework. The plaintiff must establish a *prima facie* case of retaliation by showing: (1) she engaged in conduct that Title VII protects; (2) she suffered an adverse action; and (3) the adverse

action is causally connected to the protected activity. Collazo v. Bristol–Myers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010); Noviello, 398 F.3d at 88; see Burlington, 548 U.S. at 67 (the antiretaliation vision extends beyond workplace-related or employment-related retaliatory acts and harm). The *prima facie* showing is not onerous. Montalvo Ríos v Municipality of Guaynabo, 743 F.Supp.2d 62, 69 (D.P.R., Oct 19, 2010). Once a plaintiff makes his or her case, the defendant must proffer "a legitimate, non-retaliatory reason" for the adverse action. Collazo, Inc., 617 F.3d at 46. At the third stage, the plaintiff must establish that the employer's proffered reason is a mere pretext for retaliatory animus. Id.; Colón v. Tracey, 717 F.3d 43, 49 (1st Cir. 2013). But the statute does not protect from trivial or insignificant annoyances brought forth by the protected activity. Burlington, 548 U.S. at 68-68. The statute protects against material adverse consequences, which are to be measured against an objective standard (i.e., how the actions would be perceived by a reasonable employee in plaintiff's position rather than by the subjective feelings of the plaintiff). Id.; Morales- Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010). Employer's actions must be harmful to the point that they could dissuade a reasonable worker from making or supporting a charge of discrimination. Burlington, 548 U.S. at 57.

      Plaintiff has pled a plausible claim of retaliation. She alleged that on October 22, 2021, she notified by email the purported sexual harassment to her supervisors. Docket No. 1 at ¶ 13. She also alleged that, once the purported perpetrator was reinstated to her work area, she expressed to her immediate supervisors her distress and concern. Id. at ¶ 14; see Vizcarrondo-González, 2020 WL 1459070 at *24 (to complain about incidents of harassment is a protected activity). Plaintiff also alleged to have suffered adverse employment actions, including having the perpetrator returned to his post, having been required to take an involuntary leave from work, having been asked to transfer to another work location, and having been denied selection for vacant positions at the VA. Docket No. 1 at ¶¶ 14-22. At first blush, these adverse employment actions appear sufficiently material to meet the standard set forth in Burlington, and, in any case, the degree of adversity suffered on account of the foregoing employment actions is an issue best left to trier of facts. See e.g., Burlington, 548 U.S. at 70-73. Admittedly, the complaint is lacking explicit references to a causal connection between the protected activity and the purported adverse employment action as it seems to rely mostly on the allegation in paragraph 16 of the complaint and on the apparent temporal proximity between the perpetrator's return to work and the adverse employment actions. But the Court will not delve on the matter or treat each prong of the *prima*

*facie* case as a rigid pleading standard. Despite the VA's arguments to the contrary,[4] the allegations of Plaintiff taken as whole are sufficient to survive dismissal at this stage of the proceedings. "The plausibility standard governs on a motion to dismiss. So, '[n]o single allegation need [establish] … some necessary element [of the cause of action], provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible.'" Garayalde-Rijos, 747 F.3d at 24 (quoting Ocasio-Hernández, 640 F.3d at 14-15) (error to treat each prong of prima facie case of retaliation as a rigid pleading standard).

### C.     Statutory Cap on Damages

Pursuant to 42 U.S.C. § 1981a(a)(2)(3), in an action for discrimination under the Civil Rights Act, a plaintiff cannot recover compensatory and punitive damages against the VA in excess of $300,000. This is a statutory cap provision that applies to any action under the statute. That is, the cap applies to all Title VII claims brought by in a lawsuit. Fogg v. Ashcroft, 254 F.3d 103, 107-109 (D.C.Cir. 2001) (discussing cases in other circuits holding the same). The VA seeks that the Court limit Plaintiff's potential damages in this case to a maximum of $300,000. Plaintiff did not address this argument in her opposition. The VA's motion to limit Plaintiff's damages claim to $300,000 is granted.

### IV.     Conclusion

For the reasons discussed above, the VA's motion to dismiss at Docket No. 11 is **GRANTED in part and DENIED in part**. Plaintiff's claim of retaliation with respect to the June 5, 2023 event will be **DISMISSED WITH PREJUDICE** and Plaintiff's claim for damages under Title VII is capped at $300,000. Partial Judgment to be entered according.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of March, 2025.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge

---

[4] The allegations of the VA rest on factual assertions that are outside the scope of the pleadings and that are drawn from the Final Agency Decision at Docket No. 11-2. For instance, see Docket No. 31 at pp. 31-32 (e.g., selecting officials for two of the vacant positions applied for by Plaintiff were females who did not supervise Plaintiff or had knowledge of the complaint of sexual harassment made by Plaintiff, Plaintiff's job conditions were unchanged, and Plaintiff did not have the credentials for the vacant positions). Once again, the VA asks the Court to evaluate the facts without the benefit of discovery and to draw legal conclusions from its appreciation of facts that exceed those included in the pleadings. This is not the legal standard for motions under Rule 12(b)(6).