**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| VIVIAN NIEVES<br><br>Plaintiff,<br><br>v.<br><br>DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS, DEPARTMENT OF VETERAN AFFAIRS, AND THE UNITED STATES DEPARTMENT OF JUSTICE<br><br>Defendants. | Civil No.  23-1460 (GLS) |

**OPINION AND ORDER**

Plaintiff Vivian Nieves filed a Complaint against the United States Department of Veterans Affairs ("VA") claiming damages for gender discrimination and retaliation under Title VII of the Civil Rights Act. Docket No. 1. Plaintiff filed a motion for summary judgment at Docket No. 50. The VA opposed at Docket No. 66. The VA also filed its own motion for summary judgment at Docket No. 54, which was opposed by Plaintiff at Docket No. 56, and the VA replied at Docket No. 67.  For the reasons discussed below, Plaintiff's motion for summary judgment is **DENIED** and the VA's motion for summary judgment is **GRANTED in part and DENIED in part**.

### I.      Factual and Procedural Background

Plaintiff was employed as a Medical Technician of the VA in the Arecibo Outpatient Clinic. Docket No. 1 at ¶ 8. Plaintiff alleged that she was sexually harassed by a male coworker at the VA. Id. at ¶¶ 10-12. On October 22, 2021, Plaintiff sent an email to her immediate supervisors to report the unwelcomed sexual advances made by her male coworker. Id. at ¶ 13. An investigation was performed and completed on November 16, 2021, concluding that the male coworker had engaged in unwelcomed sexual advances. Id. However, as alleged by Plaintiff, the Chief of Health Administration Service at the VA set aside the conclusion of the original investigation and, on January 10, 2022, the male coworker was returned to the work area shared

Nieves v. McDonough et al
Civil No. 23-1460 (GLS)

with Plaintiff in the Arecibo clinic. Id. at ¶ 14. Plaintiff alleges that, as of January 18, 2022, she had to take an involuntary leave due to the anxiety suffered as a result of the male coworker returning to her work site. Id. at ¶ 16. She also alleges that her supervisors asked her on three occasions to transfer to another workstation. Id. at ¶¶ 17-18, 20, 22. And that she was not selected for vacant nursing positions at the VA. Id. at ¶¶ 19, 21, 42. Plaintiff asserts three claims against the VA: gender discrimination in the modality of hostile work environment,  gender discrimination in the modality of disparate treatment, and retaliation, all under Title VII of the Civil Rights Act. Id. at ¶¶ 32-44.

Plaintiff's claim of retaliation with respect to the June 5, 2023, event (relating to Plaintiff's allegation that she was not considered for a vacant position at the VA) was dismissed and Plaintiff's claim for damages under Title VII was capped at $300,000. Docket No. 45. Discovery concluded and both sides moved for summary judgment. Plaintiff seeks summary judgment on all three (3) claims— hostile work environment, disparate treatment and retaliation under Title VII— alleging that witnesses made admissions that establish Plaintiff's allegations of sexual harassment, that the VA failed to take appropriate action to address the sexual harassment, and that the VA incurred in retaliation by placing Plaintiff on leave, denying her vacant positions, and forcing her to resign due to their inaction in the face of the allegations of sexual harassment. Docket No. 50. The VA's opposition rests on its own motion for summary judgment at Docket No. 54. There, with respect to the claim of discrimination for disparate treatment, the VA argues that Plaintiff is unable to establish a *prima facie* case of gender discrimination because there is no evidence of an adverse employment action or change in the terms and conditions of Plaintiff's employment. Docket No. 54 at pp. 10-11. The VA also alleges that there is no evidence to sustain a causal connection between the alleged adverse employment action and gender, or a discriminatory animus in the employment decisions. Id. at pp. 12-13. And there is no evidence that Plaintiff was treated differently from other similarly situated employees. Id. at p. 12. The VA further alleges that there was a legitimate non-pretextual reason why Plaintiff was not chosen for the vacant positions— there were other more qualified candidates— and that Plaintiff has no evidence to prove that such a reason was a pretext to discriminate. Id. at pp. 15-17. As it pertains to the claim for discrimination due to hostile work environment, the VA argues that, even taking as true all alleged incidents of sexual harassment, these are not sufficiently severe or pervasive to establish hostile work environment and that Plaintiff did not suffer an adverse employment action but rather was allowed

2

to take leave from work. Id. at pp. 19-26. As it pertains to the claim for retaliation, the VA argues that Plaintiff has failed to show a nexus between the purportedly adverse employment actions (i.e. the return of the coworker to the work area, being forced to take leave off work, being offered a transfer to another work location, and being denied vacant positions at the VA) and the protected activity (i.e. having reported sexual harassment in the workplace on October 2021). Id. at p. 26. And that, ultimately, Plaintiff is unable to establish a discriminatory motive in the decision not to select her for the two vacant positions at the VA. Id. at p. 27.

## II.      Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See FED. R. CIV. P. 56(a). A dispute of fact is "genuine" if "the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Dunn v. Trs. Of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal quotations and citations omitted). "Facts are material when they have the 'potential to affect the outcome of the suit under the applicable law.'" Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the initial burden of establishing "the absence of a genuine issue of material fact." See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The non-movant must demonstrate, "through submissions of evidentiary quality, that a trial worthy issue persists." See Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006). However, when the non-movant bears the ultimate burden of proof at trial, the non-movant may not "rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). Further, while the Court draws reasonable inferences from the record in the light most favorable to the non-movant, it casts aside and ignores "conclusory allegations, improbable inferences, and unsupported speculation." See García-García v. Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017) (internal quotations and citations omitted). When faced with cross-motions for summary judgment—as is the case here—the Court need not apply a different standard. See Adria Int'l Grp., Inc., v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). The Court need only "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Id.

Nieves v. McDonough et al
Civil No. 23-1460 (GLS)

### III.    Uncontested Facts

After examining the parties' submissions but having disregarded any legal arguments and conclusory statements in the parties' statements of facts, the Court finds that the following material facts are not in dispute.

1.  Ms. Vivian Nieves ("Plaintiff") is a female federal employee with the United States Department of Veterans Affairs ("USDVA"). Defendants' Statement of Uncontested Material Facts at Docket No. 52 ("DSUF") ¶ 1.

2.  Plaintiff was employed from July 18, 2021, as a part-time Medical Technician, GS-4, CVAHS, in the Arecibo Outpatient Clinic until September 12, 2023, when she resigned. DSUF ¶ 2.

3.  Plaintiff's immediate supervisor was Mrs. Diana Martínez-Báez, Medical Technician Supervisor, CVAHS. DSUF ¶ 3.

4.  Plaintiff's second-line supervisor was Mrs. Joan Hernández-Betancourt, Laboratory Manager, CVAHS. DSUF ¶ 4.

5.  Plaintiff's third-level supervisor was Dr. Daniel Conde-Sterling, Chief, Pathology & Laboratory Medicine Service, CVAHS. DSUF ¶ 5.

6.  Mr. Ralph Nieves-Pérez ("Nieves-Pérez") was Plaintiff's male coworker. DSUF ¶ 6.

7.  Nieves-Pérez was employed at the time of these events at the Arecibo Outpatient Clinic as an Advanced Medical Support Assistant. He scheduled appointments for patients. DSUF ¶ 7.

8.  Dr. Conde-Sterling testified that the Arecibo clinic is small and that Nieves-Pérez worked in an area surrounded by walls, with a hallway leading to the laboratory area, which was accessed through an entrance door. The facility is equipped with several hand sanitizers in various places. The area of the clerk at the counter, where Pérez-Nieves worked, and the phlebotomy laboratory, where Plaintiff worked, are

4

separate and divided. They can work separately. DSUF ¶ 8; Plaintiff's Statement of Uncontested Material Facts at Docket No. 50-1 ("PSUF") ¶ 6.

9. Dr. Edgardo Pérez-Lugo is the Chief, Health Administration Service, CVAHS. Dr. Pérez-Lugo did not supervise Plaintiff. DSUF ¶ 9.

10. Plaintiff testified that on July 29, 2021, Nieves-Pérez allegedly greeted her by hugging her and touching her hair when in the phlebotomy laboratory in the Arecibo Outpatient Clinic with another colleague. When the colleague left the laboratory, Nieves-Pérez allegedly hugged her again and ran his hand down her back to the top of her bottom (buttocks). Plaintiff then sat down. DSUF ¶ 13.

11. On August 10, 2021, Nieves-Pérez tried to greet Plaintiff with a hug, but she told him not to touch her because her cousin had just died of COVID-19. On August 11, 2021, a witness heard Plaintiff tell Nieves-Pérez not to touch her. DSUF ¶ 14.

12. Starting on September 28, 2021, Nieves-Pérez allegedly made daily visits to the laboratory to use hand sanitizer and stared at Plaintiff. DSUF ¶ 15.

13. On October 14, 2021, Nieves-Pérez allegedly walked in the laboratory, took hand sanitizer, and looked at Plaintiff. DSUF ¶ 16.

14. On October 22, 2021, Plaintiff sent an email to her immediate supervisors, Mrs. Martínez-Báez, indicating that Nieves-Pérez made her feel physically and sexually uncomfortable. Plaintiff claimed that she told Nieves-Pérez that she did not want to be touched due to concerns over COVID-19, especially after her cousin had passed away, and testified that this was her way of avoiding issues with him while working. As a result of Plaintiff's complaint, the USDVA ordered a fact-finding investigation. DSUF ¶ 17; PSUF ¶ 1.

15. On October 22, 2021, Mr. Danny Coriano-Feliciano informed Nieves-Pérez that, effective immediately, he was being detailed to the Utuado CBOC pending the

Nieves v. McDonough et al
Civil No. 23-1460 (GLS)

completion of a fact-finding investigation into allegations of inappropriate conduct. DSUF ¶ 18.

16. Dr. Pérez-Lugo testified that, based on the record, Nieves-Pérez touched Plaintiff once. DSUF ¶ 19.

17. Plaintiff confirmed that after she reported the alleged harassment, Nieves-Pérez was removed from the clinic right away. DSUF ¶ 20.

18. Dr. Conde-Sterling testified that, in accordance with USDVA's policy, the alleged offender, Nieves-Pérez, was immediately removed from the facility on the same day of the complaint. He was reassigned to another location, and a fact-finding investigation was initiated. DSUF ¶ 21.

19. On November 16, 2021, Mr. Coriano-Feliciano, Arecibo Medical Administrative Supervisory Specialist, issued a Fact-Finding Recommendation Report ("November 2021 Fact-Finding Report"). The November 2021 Fact-Finding Report concluded that "Nieves-Pérez has incurred in sexual harassment conduct, against Ms. Nieves which are supported by witnesses. In addition, the two additional female employees confirmed that Nieves-Pérez sexual harassment conduct has been a pattern." DSUF ¶ 22; PSUF ¶ 2; Docket No. 50-2.

20. Dr. Conde-Sterling confirmed that the November 2021 Fact-Finding Report said that Nieves-Pérez engaged in a pattern of harassment. PSUF ¶ 7.

21. The November 2021 Fact-Finding Report identified the following "Actions Taken" in Section V of the report:

• "After having knowledge of Ms. Nieves allegations on Friday October 22, 2021, the following personnel were notified:

■ Mr. Edgardo Pérez-Lugo, HAS Chief
■ Ms. Renee P. Garcia, EEO Manager
■ Dr. Daniel A. Conde, Chief Pathology, and Laboratory
■ Mr. Luis De-Jesus Mattos, Union President

6

Nieves v. McDonough et al
Civil No. 23-1460 (GLS)

• Mr. Rafael Nieves was informed verbally and in writing of the allegations against him on October 22, 2021. Nieves-Pérez was temporary detailed to Utuado Clinic, effective on Monday, October 25th, 2021.

• On Monday, October 25th, 2021, Mr. Pérez-Lugo appointed Mr. Danny Coriano to initiate the Fact-Finding process.

• On Tuesday, October 26th, 2021, Nieves-Pérez was instructed to complete the Sexual Harassment TMS course. (See Certificate)

• During Ms. Nieves interview due of her emotional breakdown, Mr. Juan Rivera-Ruiz, Union Representative, recommend her to seek professional help at the Employee Assistance Program ("EAP").

• Fact-Finding final Report was submitted to Mr. Pérez-Lugo on Tuesday, November 16, 2021."

DSUF ¶ 23.

22. The November 2021 Fact-Finding Report recommended therapy and the transfer of Nieves-Pérez. PSUF ¶ 4; Docket No. 50-2 at p. 6.

23. On January 10, 2022, Nieves-Pérez was informed that the fact finding had concluded, and it was determined that there was insufficient evidence to sustain any claim of sexual harassment in the workplace. Nieves-Pérez was instructed to avoid any contact with the Plaintiff and to refrain from visiting the Arecibo Clinic Laboratory unless a professional need required him to be in her workplace. DSUF ¶ 24.

24. The USDVA management returned Nieves-Pérez to Plaintiff's workplace without action. PSUF ¶ 3.

25. Plaintiff was not notified that Nieves-Pérez would return to her workplace. PSUF ¶ 5.

26. Plaintiff admitted that, following his return to the work site, Nieves-Pérez did not have any further opportunity to harass her. DSUF ¶ 26.

Nieves v. McDonough et al
Civil No. 23-1460 (GLS)

27. Dr. Pérez-Lugo testified that Plaintiff did not report any other event stating that Nieves-Perez had touched her a second time. DSUF ¶ 27.

28. On January 18, 2022, Plaintiff contacted Mrs. Martínez-Báez because she was distressed that Nieves-Pérez had been returned to the work location. In response to Plaintiff's concerns, all family leave care was approved. Mrs. Martínez-Báez offered Plaintiff a transfer to relocate to the Mayagüez or San Juan medical facility to a position with the same grade, title, and duties. However, Plaintiff declined the offer, stating that it was Nieves-Pérez who should be forced to relocate. DSUF ¶ 28.

29. Plaintiff testified that she ceased working when Nieves-Pérez returned to the clinic on January 18, 2022. DSUF ¶ 25.

30. Ms. Janette Rivera, from USDVA's Benefits Section of Human Resources, testified that Plaintiff invoked Family Medical Leave Act ("FMLA") on January 19, 2022. FMLA is leave without pay ("LWOP"), but she could substitute LWOP with her available annual or sick leave. She was entitled to 12 workweeks of LWOP since she was a part-time employee. DSUF ¶ 31.

31. Dr. Conde-Sterling testified that all of Plaintiff's leave requests were approved. Plaintiff had exhausted all her sick and annual leave, so she was placed on FMLA until administrative leave was approved. DSUF ¶ 32.

32. Ms. Martínez-Báez testified that FMLA was approved on February 15, 2022. DSUF ¶ 33.

33. Management offered Plaintiff the opportunity to transfer to a different location on February 4, 2022, March 24, 2022, and April 6, 2022. However, Plaintiff declined these offers. DSUF ¶ 29.

34. Dr. Conde-Sterling testified that management had the authority to move Plaintiff to another clinic because it was in her job description. It never exercised its authority to transfer or move Plaintiff to another work site.

8

Management said: "if you want." Plaintiff was never ordered to go to another clinic. DSUF ¶ 30.

35. Ms. Rivera testified that around May 21, 2022, she was informed by another management official that Plaintiff was not required to submit any further leave requests. DSUF ¶ 34.

36. Dr. Norma Arroyo was the selecting official for the position of Registered Nurse/Case Manager/Community Care Cancer Navigator, under Vacancy Announcement Number VN-0610-00, in Arecibo. Dr. Arroyo was employed as Manager of Hematology Oncology Ambulatory Clinic, CVAHS. DSUF ¶ 10.

37. Dr. Lillian Arroyo was the selecting official for the position of Registered Nurse/Suicide Prevention, under Vacancy Announcement Number CBTC11360201-22-LB, in Arecibo and Mayagüez. Dr. Arroyo was employed as the Acting Associate Chief of Staff, Behavioral Health Sciences, CVAHS. DSUF ¶ 11.

38. On January 8, 2022, Plaintiff applied for a position as a Registered Nurse/Case Manager/Community Care Cancer Navigator, VN-0610-00, Arecibo Outpatient Clinic, CVAHS, advertised under Vacancy Announcement Number 20220125-CBTC-003. On February 15, 2022, USDVA informed Plaintiff that she had not been selected for the position. As the selecting official for the vacancy, Dr. Norma Arroyo established the criteria for evaluation of the resumes of the 16 candidates who applied for the position. Dr. Arroyo tasked Carmen Reyes Nieves with rating the resumes. Applicants who achieved an overall resume score of 60% or more were then forwarded for an interview. DSUF ¶ 43.

39. Plaintiff achieved a resume score of 25% and thus was not forwarded for an interview. The selectee achieved a resume score of 70% and was later selected for the vacant position after undergoing an interview. Dr. Arroyo testified that the selectee was chosen instead of Plaintiff due to his qualifications. Dr. Arroyo specified that Plaintiff's experience was as a Registered Nurse ("RN"), whereas the selectee had a Master of Science in

Nursing in addition to his experience as a RN. Plaintiff also lacked experience in coordination, oncology, and MSN. DSUF ¶ 44.

40. Plaintiff testified that she does not claim to be more qualified than the individual selected for the position. Rather, she asserted that she was not interviewed despite being eligible, and that she believes management failed to interview her in retaliation for her prior complaint of sexual harassment. DSUF ¶ 45.

41. On February 7, 2022, Plaintiff applied for a RN, Suicide Prevention, vacancy advertised under Vacancy Announcement Number CBTC-11360201-22-LB. On March 29, 2022, USDVA informed Plaintiff that she had not been selected for the position. Although Plaintiff was interviewed for the role, another female was selected for the position. DSUF ¶ 46.

42. Plaintiff achieved an interview score of 53%. The selectee achieved an overall interview score of 90.83%. The selectee had three years' experience as a Suicide Prevention Manager in the VA Suicide Prevention Program in San Juan, Puerto Rico. The selectee achieved a higher score than Plaintiff during the interview process. A member of the interview panel testified that she awarded Plaintiff a score of 20 points out of a possible 40 points, whereas the selectee achieved an interview score of 35 points, because she provided superior responses to the performance-based questions as compared to Plaintiff. DSUF ¶ 47.

43. A second member of the interview panel testified that she gave Plaintiff a score of 22 points and the selectee a score of 37 out of 40 points. She explained that the selectee provided stronger responses to the performance-based interview questions and had more relevant experience than Plaintiff for the position, having already served three years as a Case Manager in the Suicide Prevention Program. A third panel member similarly testified that she awarded Plaintiff an interview score of 22 points, compared to the selectee's score of 37 out of 40 possible points. Thus, Plaintiff was not selected for the vacancy due to her lower scores. DSUF ¶ 48.

Nieves v. McDonough et al
Civil No. 23-1460 (GLS)

44. On May 28, 2022, Plaintiff filed an Equal Employment Office ("EEO") Complaint of Employment Discrimination before USDVA's Office of Resolution Management Diversity and Inclusion ("ORMDI"). DSUF ¶ 36.

45. On June 29, 2022, Dr. Pérez-Lugo amended the Fact-Finding Recommendations of November 16, 2021. He clarified that although the fact finder comprehensively collected information and interviewed pertinent individuals, the conclusions and recommendations could not be substantiated by the findings and information contained in the witness statements. Dr. Pérez-Lugo listed some of the conclusions contained in the Fact-Finding Recommendation Report, followed with a brief observation. For example, he noted the following:

> "f. Conclusion contained in tenth bullet of the fact finding: According to statements and interviews performed, the conclusion of this Fact-Finding, is that Nieves-Pérez has incurred in sexual harassment conduct, against Ms. Nieves which are supported by witnesses. In addition, the two additional female employees confirmed, that Nieves-Pérez sexual harassment conduct has been a pattern.
>
> Observation: None of the witness statement clearly established that Nieves-Pérez was clearly made aware that his behaviors was unwelcome; therefore, stating that Nieves-Pérez incurred in sexual harassment conduct is not substantiated." DSUF ¶ 37.

46. Dr. Pérez-Lugo testified that Wilmarie Bayron informed that they could not conclude that Nieves-Pérez engaged in sexual harassment, as he was never clearly informed that his behavior was unwelcome. DSUF ¶ 38.

47. Management acknowledged that the employee's behavior made Plaintiff and other witnesses feel uncomfortable, and for this reason, immediate action was taken to address the situation. DSUF ¶ 39.

Nieves v. McDonough et al
Civil No. 23-1460 (GLS)

48. On July 11, 2022, Plaintiff stated under oath that she was not aware of a coworker similarly situated to her that was treated more favorably than her. DSUF ¶ 40.

49. On June 12, 2023, USDVA-Office of Employment Discrimination Complaint Adjudication issued a Final Agency Decision concluding that Plaintiff had not been subject to unlawful employment discrimination. DSUF ¶ 41.

## IV.    Discussion

Title VII prohibits employers from discriminating "against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). Claims for hostile work environment and disparate treatment can be asserted under that provision as claims for discrimination based on sex. A separate "retaliation provision" makes it unlawful for an employer "to discriminate against any of [its] employees ... because [an employee] has opposed any practice made ... unlawful" under the substantive provision. Id. § 2000e-3(a)." Stratton v. Bentley Univ., 113 F.4th 25, 38 (1st Cir. 2024). As such, while "Title VII's substantive provision protects against discrimination based on who one is (i.e., a member of a protected class) […] the retaliation provision protects what one does (i.e., engages in protected conduct). Id. (emphasis in the original) (citing Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006)).

### 1.    Hostile Work Environment

A hostile work environment is "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Syst., Inc. 510 U.S. 17, 21 (1993). To prevail on a claim for hostile work environment, Plaintiff would have to establish that: (1) she is a member of the protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based in part on sex, (4) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create an abusive work environment, (5) the sexually objectionable conduct was both objectively and subjectively offensive, and (6) there is some basis for employer liability. Vizcarrondo-González v. Perdue, 2020 WL 1459070, at *9 (D.P.R. Mar. 20, 2020) (citing Roy v. Correct Care Solutions,

LLC, 914 F.3d 52, 61-62 (1st Cir. 2019)); Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998); Nieves-Borges v. El Conquistador Partnership, L.P., S.E., 936 F.3d 1, 8 (1st Cir. 2019).

As is typical in these types of cases, the VA here is not challenging that Plaintiff can establish the first three (3) elements of the claim. Rather, the VA focuses on the element that requires competent evidence of sufficiently severe or pervasive harassment that would have altered the conditions of Plaintiff's employment. To be severe or pervasive, the unwelcomed conduct must be objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive. Faragher, 524 U.S. 775, 787 (1998). In making this determination, the Court must consider the totality of the circumstances (Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006)), including factors such as "the frequency of the discriminatory conduct; its severity; whether it is threatening and humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." Harris, 510 U.S. at 23. "[T]he pattern of conduct complained of must be (1) characterized by intimidation, ridicule and insult, not just minor unpleasantness or criticism, (2) offensive to the complainant precisely because of his or her membership to a protected class, and (3) sufficiently burdensome to materially alter the conditions of employment." White v. N.H. Dept of Corr., 221 F.3d 254, 259-260 (1st Cir. 2000). The Court is called to "distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher, 524 U.S. at 788.

The undisputed facts establish that the alleged harassment took place during three (3) months— starting on July 29, 2021, and ending on October 22, 2021. On that date, Plaintiff sent an email informing her supervisors of the coworker's conduct prompting an internal investigation, after which the employee charged with the harassment was removed from the work area. According to the uncontested facts, during those three months, Nieves-Pérez greeted Plaintiff with a hug, touched her hair, and ran his hand down her back to the top of her buttocks. DSUF ¶ 13. He tried to greet Plaintiff with a hug on another occasion but was stopped. DSUF ¶ 14. And, for a month, starting on September 28, 2021, Nieves-Pérez made daily visits to the laboratory to use hand sanitizer and stare at Plaintiff. DSUF ¶¶ 15, 16. While each incident, viewed in isolation, may seem tolerable, their cumulative effect— particularly given that the physical contact was

immediately followed by daily visits to Plaintiff's work area to stare at her— could lead a reasonable jury to find the conduct sufficiently pervasive to meet the threshold. See Nieves-Borges, 936 F.3d at 10 (a series of individually tolerable incidents that add up to a pattern of hostility can suffice). The foregoing is especially true when one considers that management at the VA acknowledged that Nieves-Pérez's behavior made Plaintiff and other witnesses feel uncomfortable. DSUF ¶ 39. And that the initial fact-finding investigation of the VA concluded that "Nieves-Pérez has incurred in sexual harassment conduct, against Ms. Nieves which are supported by witnesses. In addition, the two additional female employees confirmed that Nieves-Pérez sexual harassment conduct has been a pattern." DSUF ¶ 22; PSUF ¶¶ 2, 7; Docket No. 50-2. Nieves-Pérez's behavior thus meets the "objectively and subjectively offensive" standard for purposes of summary judgment.

However, Plaintiff's Title VII claim against the VA for the hostile work environment fails on the last element— the basis for employer liability. "The Supreme Court has divided the universe of employer liability [under Title VII] along a line that separates supervisors from non-supervisors." Caruso v. Delta Air Lines, Inc., 113 F.4th 56, 70 (1st Cir. 2024) (quoting Noviello, 398 F.3d at 94). When the perpetrator of the alleged harassment is a coworker, rather than a supervisor, the employer can be liable for the alleged misconduct **only** when the purported harassment is causally connected to the negligence of the employer. Id. (emphasis added). As such, to establish the liability of the VA on account of the hostile work environment claimed by Plaintiff in this case, Plaintiff would be required to show a causal connection between the VA's actions and the harassment experienced by Plaintiff, and that the VA's actions amounted to negligence. Id. at 70-71. In other words, Plaintiff would need to establish that the VA knew or should have known about the harassment and failed to take prompt and appropriate remedial action. Vizcarrondo-González v. Vilsack, 2024 WL 3221162, at *6 (1st Cir. June 28, 2024) ("The last factor requires evidence that the employer either created or tolerated the hostile atmosphere.") (citation omitted).

There is no question that Nieves-Pérez was a coworker of Plaintiff and that, therefore, the negligence standard applies. DSUF ¶ 6. There is also no question that, on October 22, 2021, when Plaintiff sent the email to her immediate supervisors indicating that Nieves-Pérez made her feel physically and sexually uncomfortable, the VA immediately removed Nieves-Pérez from the work area and initiated a fact-finding investigation. DSUF ¶¶ 17-18, 20-21; PSUF ¶ 1. That same day, Mr. Danny Coriano-Feliciano informed Nieves-Pérez that, effective immediately, he was being

Nieves v. McDonough et al
Civil No. 23-1460 (GLS)

detailed to the Utuado CBOC pending the completion of a fact-finding investigation into allegations of inappropriate conduct. DSUF ¶¶ 18, 20-21. And, while there is also no dispute that the result of the initial fact-finding investigation was that the coworker had incurred in sexual harassment (DSUF ¶¶ 22-23; PSUF ¶ 2; Docket No. 50-2), and that, despite this initial conclusion, the coworker was subsequently returned to the workplace without forewarning to Plaintiff on account of a supposed further investigation which led to a different result (see PSUF ¶¶ 3, 5), it is also uncontested that there is no evidence of any inappropriate contact or conduct by Nieves-Pérez after his reinstatement in the work area. See DSUF ¶¶ 26-27.

Now, the Court acknowledges, as proposed by Plaintiff, that the absence of further harassment may be explained by the fact that, upon Nieves-Pérez's return to the workplace, Plaintiff went on leave and eventually resigned, leaving him with no further opportunity to incur in offensive conduct. And that requiring Plaintiff to stay at her post and endure additional harassment to be able to succeed in a hostile work environment claim against the VA seems unreasonably burdensome. The Court also acknowledges that the circumstances under which the VA decided to reject the initial findings and return the coworker to the work area are unquestionably murky, especially when the VA did not even inform Plaintiff of the change in the VA's conclusions before Nieves-Pérez was allowed to return to the work area and that the initial fact-finding conclusion was not formally amended by the VA until months later and only after Plaintiff submitted her complaint with the EEO. DSUF ¶¶ 36-37. But the law clearly establishes that employer liability for coworker harassment is only actionable when there is a causal connection between the harassment and the employer's negligence. No harassment was reported after the VA first learned of, and acted on, the purported harassment. Therefore, allowing this claim of hostile work environment to proceed to trial would be contrary to the negligence standard, which requires that there be some basis to conclude that the employer's negligence caused or contributed to the hostile work environment. "Where there is no causal connection between an employer's actions and a co-worker's creation of a hostile work environment, it cannot be said that the 'employer ha[s] acted for discriminatory reasons.'" Caruso, 113 F.4th at 71 (citation omitted and emphasis in the original) (affirming summary judgment and rejecting employer liability when plaintiff argued that there was a genuine issue of material fact as to whether the employer declined to conduct a thorough and good-faith investigation of the harassment and/or failed to take prompt action to stop and prevent further sexual harassment; no sexual harassment or contact with alleged

harasser after complaint to employer and employer investigation); Vizcarrondo-González v. Perdue, 2020 WL 1459070, at *15 (D.P.R. Mar. 20, 2020), aff'd sub nom. Vizcarrondo-González, 2024 WL 3221162 (1st Cir. June 28, 2024) ("Still, when the employer's response stops the harassment, there can be no employer liability under Title VII as a matter of law.").

### 2.    Disparate Treatment

Title VII prohibits disparate treatment discrimination, precluding an employer from treating a particular person less favorably than others because of a protected trait. Frith v. Whole Foods Market, Inc., 38 F.4th 263, 270 (1st Cir. 2022) (citations omitted). "Disparate-treatment cases present 'the most easily understood type of discrimination.'" Ricci v. DeStefano, 557 U.S. 557, 577 (2009). A disparate-treatment plaintiff must establish intentional discrimination— that the defendant had a discriminatory intent or motive for taking a job-related action. Id. (quotations omitted); Frith, 38 F.4th at 270 (citation omitted).

A discrimination claim under Title VII may be established through direct evidence of discrimination. Patten v. Wal-Mart Stores East, Inc., 300 F.3d 21, 25 (1st Cir. 2002). Direct evidence "is evidence which, in and of itself, shows a discriminatory animus." Jackson v. Harvard University, 900 F.2d 464, 467 (1st Cir. 1990). This "consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60 (1st Cir. 2000); see also Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996) (remarks must be linked to adverse employment action). Direct evidence of discrimination is "relatively rare," although not insurmountable. Patten, 300 F.3d at 25 (quoting Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 580 (1st Cir. 1999)). In the absence of direct evidence of discrimination, a plaintiff claiming relief for discrimination under Title VII must satisfy the burden-shifting framework established by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Zayas-Ortiz v. Becton Dickinson Caribe, Ltd., 878 F.Supp.2d 351 (D.P.R., July 23, 2012). Indeed, disparate treatment cases ordinarily proceed under the three-step burden shifting framework of McDonnell Douglas. Cólon v. Mills, 646 F. Supp. 2d 224, 234 (D.P.R. 2009), aff'd sub nom. Rivera-Colón v. Mills, 635 F.3d 9 (1st Cir. 2011).

Under the McDonnell Douglas framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. McDonnell Douglas, 411 U.S. at 802. As such, a plaintiff claiming relief for disparate treatment must first

Nieves v. McDonough et al
Civil No. 23-1460 (GLS)

establish: (1) that she is a member of a protected class, (2) that she is qualified for the job, (3) that she suffered an adverse employment action at the hands of the employer, and (4) that there is a causal connection between her membership in a protected class and the adverse employment action. Luceus v. Rhode Island, 923 F.3d 255, 258 (1st Cir. 2019); Espional v. National Grid NE Holdings 2, LLC, 693 F.3d 31, 34 (1st Cir. 2012). This is not a particularly onerous burden, and all inferences should be drawn in favor of finding that a *prima facie* case has been established. "We have described the prima facie case as a 'small showing,' that is 'not onerous,' and is 'easily made[.]'" Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003) (internal citations omitted). If successful on that front, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the objected employment action. McDonnell Douglas, 411 U.S. 792 (1973). The burden of the employer is one of production, not persuasion. Id. The employee always retains the burden of persuasion, and if the employer articulates a legitimate non-discriminatory justification for the adverse employment action, the burden shifts back to the employee, who is required to demonstrate that the employer's articulated reason for the employment action is pretextual. Id. at 803-804. To succeed on a disparate-treatment claim, a plaintiff must establish that the defendant had a discriminatory intent or motive for taking the job-related action. Frith, 38 F.4th at 271 (internal citations and quotations omitted).

The VA argues that Plaintiff is unable to establish a *prima facie* case of discrimination because she did not suffer an adverse employment action or that any adverse employment action was because of her gender. Alternatively, the VA argues that it has articulated a non-discriminatory justification for the employment action, and that Plaintiff is unable to establish that such a justification is a pretext for discrimination. The undisputed evidence in this case establishes that Plaintiff was subjected to what she perceived to be sexual harassment for a span of three (3) months, that she reported the harassment to her employer, and that the employer conducted an investigation which initially corroborated the allegations of sexual harassment both for Plaintiff and other female coworkers. But that the purported harasser was returned to the work area, after the employer decided that the claims of sexual harassment were not substantiated. The VA's change in direction was not communicated to Plaintiff prior to reinstating the coworker in the work area and was not reduced to writing until months after the decision to reinstate the coworker. As alleged, Plaintiff then felt that she needed to take leave from work and eventually resign. Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (an adverse employment action is one that

17

affects the employment or alters the conditions of the workplace, which can include a decision that causes a significant change in the terms of employment). But the decision to take leave and ultimately resign, if deemed to have been involuntary by Plaintiff, was made in reaction to the VA's decision to reinstate Nieves-Pérez to the workplace. And the decision to reinstate Nieves-Pérez to the work area was based on the ultimate result of the VA's investigation.

As such, we need to decide whether an adverse employment action may be premised on the allegedly deficient investigation by the VA. There are cases that conclude that an employer's failure to investigate a complaint or the employer's deficient investigation of a complaint cannot be the basis for finding an adverse employment action in a disparate treatment claim. Martínez-Taboas v. Universidad Carlos Albizu, Inc., 2021 WL 2786265, at *5 (D.P.R. July 2, 2021) (failure to investigate a harassment complaint is not, in and of itself, a materially adverse employment action); Fields v. Am. Airlines, Inc., 696 F. Supp. 3d 66, 97 (E.D. Pa. 2023), aff'd, 2024 WL 3534478 (3d Cir. July 25, 2024) (failure to investigate a claim of discrimination is not an adverse employment action that can give rise to a claim for disparate treatment) (citing Hare v. Potter, 220 F. App'x 120, 134 (3d Cir. 2007)); Kirkland v. Off. of the Mental Health of the State of the State of New York, Buffalo Psychiatric Ctr., 2016 WL 7974151, at *13 (W.D.N.Y. Nov. 15, 2016) (citing string of cases in the Second Circuit that have held that an employer's failure to investigate cannot be the basis for an adverse employment action in a disparate treatment claim). However, the Court has been unable to find a decision by the First Circuit on this point and courts that have discussed the issue have considered the possibility that, if the allegedly insufficient investigation of the employer altered the terms and conditions of employment of the employee or caused a materially adverse effect on the complaining employee, an adverse employment action may be inferred. See Mooney v. Emory Univ., 2024 WL 6083390, at *11 (N.D. Ga. Feb. 5, 2024); Yampierre v. Baltimore Police Dep't, 2022 WL 3577268, at *37 (D. Md. Aug. 18, 2022) (considering whether failure to investigate plaintiff's complaint caused plaintiff to suffer any demonstrable harm); Colas v. Lourdes-Noreen McKeen Residence for Geriatric Care, Inc., 2021 WL 4896891, at *6 (S.D. Fla. Sept. 29, 2021) (failure to investigate alone insufficient to constitute adverse employment action, but court could consider whether there was a subsequent harm resulting from the failure to investigate). Therefore, at this stage of the proceedings and considering that Plaintiff testified that she was distressed, had to seek leave and resign because of the VA's ultimate decision to return the male coworker to the work area— while she was on the

flip side offered a transfer (see DSUF ¶¶ 28-19)— the Court finds that Plaintiff has sufficiently established that she suffered an adverse employment action that was causally connected to her gender and established her *prima facie* case. Kosereis, 331 F.3d at 213 (small showing is required for *prima facie* case).

The VA has advanced a legitimate non-discriminatory reason for the employment action— that its re-evaluation of the evidence of sexual harassment yielded a different result.[1] As such, we look at the evidence to see if Plaintiff has made a sufficient showing with respect to pretext that would require presenting this case for resolution by jury. "[T]here is no 'mechanical formula' for finding pretext." Che v. MBTA, 342 F.3d 31, 39 (1st Cir. 2003) (internal citations omitted). García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008) (a plaintiff can demonstrate that an employer's stated reason is pretextual "in any number of ways"). A plaintiff may highlight "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a fact finder could infer that the employer did not act for the asserted non-discriminatory reasons." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000); Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662–663 (1st Cir. 2010). A plaintiff may also demonstrate pretext "through a showing that an employer has deviated inexplicably from one of its standard business practices." López-Cruz v. FPV & Galindez, PSC, 922 F. Supp. 2d 225, 232 (D.P.R. 2013) (citations omitted); Guillermety Méndez v. Puerto Rican Cement Co., Inc., 56 F.Supp.2d 176, 181 (D.P.R.1999) (citing Mesnick v. General Electric Co., 950 F.2d 816, 824 (1st Cir. 1991)). And, in cases of disparate treatment, an employee can also demonstrate pretext by establishing that she was treated differently from other similarly situated employees.

The undisputed facts of the case demonstrate that the initial fact-finding investigation that was reported in November 2021, concluded that Nieves-Pérez incurred in sexual harassment

---

[1]    Note that in this part of the VA's memorandum of law, the VA seems to conflate the claims of disparate treatment and retaliation by arguing that the legitimate non-discriminatory reason for the employment action was that other candidates were better suited for the vacant positions available at the VA, which is why Plaintiff was not selected for those positions. See Docket No. 54 at pp. 14-19. But while these arguments are relevant to Plaintiff's retaliation claim (as discussed below), these are not relevant to Plaintiff's disparate treatment claim. The Court has nonetheless assumed for purposes of discussion that the VA's articulated non-discriminatory reason for reinstating the coworker to the work area was its decision to discard the conclusions and recommendations of the fact-finding investigation because the sexual harassment was not, in the VA's view at that time, properly substantiated.

Nieves v. McDonough et al
Civil No. 23-1460 (GLS)

against Plaintiff, that the harassment was corroborated by witnesses, and that two additional female employees confirmed that Nieves-Pérez's sexual harassment conduct had been a pattern. DSUF ¶ 22; PSUF ¶ 2; Docket No. 50-2. The undisputed facts also establish that, despite this conclusion, the coworker was returned to the work area without any action on January 10, 2022 (DSUF ¶ 24), even though the initial fact-finding investigation recommended that Nieves-Pérez be sent to therapy and transferred (PSUF ¶ 4; Docket No. 50-2 at p. 6). The VA did not perform a new fact-finding investigation at that time or at any later time. Docket No. 52-3 at p. 50. Despite having a written recommendation that the coworker be transferred to another work area, Plaintiff was not informed of the VA's decision to return the coworker to the work area prior to his return on January 18, 2021. PSUF ¶¶ 3, 5. The undisputed facts also establish that management at the VA acknowledged that the employee's behavior made Plaintiff and other witnesses feel uncomfortable. DSUF ¶ 39. And that, despite claiming that the conclusion of the initial fact-finding investigation was not substantiated and that no sexual harassment occurred, it was not until June 2022, a month after Plaintiff filed her complaint with the EEO and more than five (5) months after Plaintiff stopped working at her post, that the VA amended the Fact-Finding Recommendations of November 16, 2021, without performing a new investigation. DSUF ¶¶ 36-37.[2] After-the-fact justifications, provided after the beginning of legal action, can give rise to the finding of pretext. Santiago-Ramos, 217 F.3d at 56 (memorandum prepared several weeks after the termination, after it was clear that plaintiff was initiating legal action against employer, presented an issue of fact preventing the entry of summary judgment on the issue of pretext). As discussed above, a fact finder may infer pretext when the legitimate reason proffered by the employer is marred by inconsistencies or contradictions. Id.; Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 431-32 (1st Cir. 2000) ("when a company, at different times, gives different and arguably inconsistent

---

[2]     The Court is baffled by the VA's argument that Plaintiff has ignored, hid or purposely omitted the amendment of the November 2021 fact-finding investigation. See Docket No. 67 at pp. 3-5. It seems evident from the arguments that the VA has unexplainably insisted on minimizing the significance of that original finding of sexual harassment, despite offering no contemporaneous evidence to justify discarding the original conclusion without conducting a new fact-finding investigation. What is more, the VA even asks the Court to credit its self-serving conclusion that the VA "acted in accordance with the amended fact-finding report" (see Docket No. 67 at p. 4), when the amended fact-finding report was not issued until months after the decision to bypass the original conclusion of sexual harassment without absolutely no evidence in the record to explain why such a change was justified **at the time when it was made**.

explanations, a jury may infer that the articulated reasons are pretextual."). For this reason and considering that the First Circuit has been "'"particularly cautious" about affirming an employer's motion for summary judgment on a discrimination claim when the case boils down to whether the employer's stated reasons are pretextual,'" Plaintiff's claim for discrimination due to disparate treatment survives. See Kosereis, 331 F.3d at 216; Santiago-Ramos, 217 F.3d at 54–55 (court should exercise caution before granting summary judgment for employers on issues of pretext).

### 3. Retaliation

Title VII makes it unlawful for an employer to retaliate against an employee because the employee has taken an action to enforce her rights under Title VII. 42 U.S.C. § 2000e. Pursuant to Title VII:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... for an employment agency ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a).

"The antiretaliation provision seeks to secure [a workplace where individuals are free from discrimination] by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. at 62. When, like here, there is no direct evidence of retaliation, retaliation claims are subject to the McDonnell Douglas burden-shifting framework. The plaintiff must establish a *prima facie* case of retaliation by showing: (1) she engaged in conduct that Title VII protects; (2) she suffered an adverse action; and (3) the adverse action is causally connected to the protected activity. Collazo v. Bristol–Myers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010); Noviello, 398 F.3d at 88. Some examples of adverse employment actions in the retaliation context "include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" Morales-Vallellanes v. Potter, 605 F.3d 27, 35–36 (1st Cir. 2010). The statute does not protect from trivial or insignificant annoyances brought forth by the protected activity. Burlington, 548 U.S. at 68-68. The statute protects against material adverse consequences, which are to be measured against an objective standard (i.e., how the actions would be perceived by a reasonable

employee in plaintiff's position rather than by the subjective feelings of the plaintiff). Id.; Morales-Vallellanes, 605 F.3d at 36. But the "material adverse" concept in the retaliation context is broad; it is not limited to workplace-related or employment-related acts or harms. Stratton, 113 F.4th at 42; Burlington, 548 U.S. at 67 (the antiretaliation vision extends beyond workplace-related or employment-related retaliatory acts and harm). An employer's actions must be harmful to the point that these could dissuade a reasonable worker from making or supporting a charge of discrimination. Burlington, 548 U.S. at 57; Stratton, 113 F.4th at 43 (discussing Burlington and rejecting application of the severe or pervasive threshold required for hostile work environment claims). The *prima facie* showing is not onerous. Montalvo Ríos v Municipality of Guaynabo, 743 F.Supp.2d 62, 69 (D.P.R. 2010). Once a plaintiff makes his or her case, the defendant must proffer "a legitimate, non-retaliatory reason" for the adverse action. Collazo, Inc., 617 F.3d at 46. At the third stage, the plaintiff must establish that the employer's proffered reason is a mere pretext for retaliatory animus. Id.; Colón v. Tracey, 717 F.3d 43, 49 (1st Cir. 2013).

The VA concedes that complaining of sexual harassment to her superiors is a protected conduct under Title VII. See Vizcarrondo-González, 2020 WL 1459070, at *24 (to complain about incidents of harassment is a protected activity). The VA takes issue with the elements of adverse employment action and the required causal connection needed for Plaintiff to establish a *prima facie* claim of discrimination. As alleged by Plaintiff, the adverse employment actions are that the alleged harasser was returned to her same workstation after the initial investigation, that she was forced to take leave, she was offered transfers, and she was ultimately led to resign. But even assuming that these are all adverse employment actions taken by the VA[3], there is no evidence that these are causally connected to the protected activity— complaining about the sexual harassment to her supervisors. That is, that these actions were motivated by her complaint rather than by the conclusion of the VA (substantiated or not) that the coworker's conduct did not amount to sexual harassment and that he could thus be returned to the workstation.

Plaintiff's case with respect to the two vacant positions sought and not granted is stronger but still fails to carry the day. Plaintiff claims that, after reporting the sexual harassment, she applied for two (2) vacant positions at the VA and was not granted the positions in retaliation.

---

[3]    Pursuant to the undisputed facts, Plaintiff requested, and was freely granted, leave, and she was asked whether she wanted to transfer but was never ordered to transfer or instructed that a transfer or the taking of leave was a condition of her employment. DSUF ¶ 28-29, 31-34.

Nieves v. McDonough et al
Civil No. 23-1460 (GLS)

These were the positions of Registered Nurse/Case Manager/Community Care Cancer Navigator and Registered Nurse/Suicide Prevention. And these decisions took place relatively soon after her complaint of sexual harassment in the early months of 2022. But temporal proximity notwithstanding, there is no evidence in the record to establish that the selecting officials for both positions had knowledge of the sexual harassment complaint. See Pomales v. Celulares Telefonica, 447 F.3d at 85 (temporal proximity can create an inference of causation in the proper case but there must be evidence that the decision-makers knew or were involved in the investigation triggered by the protected conduct); Stratton, 113 F.4th at 46 (absent evidence that decision maker knew about complaint of discrimination, no reasonable jury could conclude that protected conduct was the but-for cause of the adverse action taken by the employer; summary judgment granted for failure to establish *prima facie* case of retaliation); Ceballos-Germosen v. Sociedad Para Asistencia Legal, 2020 WL 5985838, at *17 (D.P.R. Oct. 7, 2020) (temporal proximity alone insufficient). Furthermore, there is no evidence that either selecting official took Plaintiff's sexual harassment complaint in consideration in making the recruitment decision. Rather, the undisputed evidence establishes that the selecting officials used objective criteria to select the employees ultimately hired for the positions and that the selected persons' credentials and interview performance better met the requirements of each of the positions. See DSUF ¶¶ 10-11, 43-44, 46-48.

Plaintiff also testified that she does not claim to be more qualified than the individuals selected for the position. DSUF ¶ 45. Under this scenario, there is just no evidence to conclude that Plaintiff's complaint of sexual harassment was the but-for cause for Plaintiff not having been selected for either of the two positions at the VA. See Stratton, 113 F.4th at 44 (causation element requires that protected activity was but-for cause of the alleged adverse action of the employer); Ceballos-Germosen, 2020 WL 5985838, at *17 ("[i]t is not enough to make conclusory allegations or to declare that the employer took certain adverse actions time *after* Plaintiff complained to establish causation." (emphasis in the original)); see e.g., Hernández v. Wilkinson, 986 F.3d 98, 103 (1st Cir. 2021) (affirming summary judgment on retaliation because adverse action was justified with eight reasons that had nothing to do with the complaint); Agosto-Hernández v. PRWireless PR, LLC, 2024 WL 3179430, at *15 (D.P.R. June 26, 2024). Because no reasonable fact finder could conclude that the purported adverse employment actions were taken exclusively because of Plaintiff's protected conduct, summary judgment is warranted rejecting the retaliation claim as matter of law.

Nieves v. McDonough et al
Civil No. 23-1460 (GLS)

## V.    Conclusion

For the reasons discussed above, the Plaintiff's motion for summary judgment is **DENIED** and the VA's motion for summary judgment is **GRANTED in part and DENIED in part**. Plaintiff's hostile work environment and retaliation claims under Title VII will be **DISMISSED WITH PREJUDICE**. Partial Judgment to be entered according.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2026.


s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge

24